# In the United States Court of Federal Claims

No. 18-923C
Filed: August 10, 2020

|  |  |
|---|---|
| **TONIA TIPPINS, et al.,**<br><br>    *Plaintiffs*,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>    *Defendant.* | **Keywords:** Involuntary Retirement; Career Retention Screening Panel; Discovery; RCFC 30(b)(6); Motion to Compel |

*Nathan S. Mammen, Ragan Naresh, and Emily M. Kustina*, Kirkland & Ellis LLP, Washington, D.C., for the plaintiff.

*Dlisa M. Sanchez*, Trial Attorney, Commercial Litigation Branch, *with whom were Martin F. Hockey, Jr.,* Deputy Director, *Robert E. Kirschman, Jr.,* Director, Civil Division, *Ethan P. Davis,* Acting Assistant Attorney General, U.S. Department of Justice, Washington, D.C., *and LCDR Jesse L. Houck*, U.S. Coast Guard, Of Counsel, for the defendant.

## OPINION AND ORDER

**Tapp, Judge.**

  Plaintiffs Tonia Tippins, Derrik Magnuson, George Holloway, Jennifer Rehberg, Glenda Smithleeth, and M. Allen Bumgardner (collectively "Plaintiffs") brought this action to challenge the legality of their involuntary retirement from the United States Coast Guard. On March 16, 2020, the Plaintiffs filed a Motion to Compel the United States, through the Coast Guard, to produce a designee for a RCFC 30(b)(6) Deposition. (Mot. to Comp., ECF No. 39). On May 18, 2020, the United States responded and moved for a protective order relieving it of any obligation to provide a representative to testify about the twelve topics contained in Plaintiffs' RCFC 30(b)(6) deposition notice. (Def.'s Resp. and Mot. for Prot. Order ("Def.'s Resp."), ECF No. 46). Plaintiffs filed their Reply on June 15, 2020. (Pls.' Reply, ECF No. 50). These competing motions now stand submitted.

  For the following reasons, the United States' Motion for a Protective Order is **DENIED**. The Court **DEFERS** resolution of Plaintiffs' Motion to Compel pending further discussions between the parties.

### I. Background

  The ultimate resolution of this case turns on whether the Coast Guard acted contrary to law when it involuntarily retired numerous Coast Guard members from 2010 to 2014 through Career Retention Screening Panels ("CRSPs"). The United States maintains that the retirements were part of a lawful "reduction in force" under 14 U.S.C. § 357(j). There have been no

proceedings before an administrative board to determine the lawfulness of these retirements. This Court has previously determined this case should be briefed for summary judgment on the legality of Plaintiffs' retirement via CRSPs in lieu of Enlisted Personnel Boards. (Order, ECF No. 22 (J. Smith)).[1]

To that end, Plaintiffs seek to depose a representative from the Coast Guard regarding several topics outlined in a July 11, 2019 request for production of documents. (Mot. to Comp., Ex. 1). Plaintiffs served a formal RCFC 30(b)(6) notice on the United States on November 27, 2019, which outlined twelve topics of examination. (Mot. to Comp., Exs. 4, 5). On February 7, 2020, the United States responded to that notice stating it would oppose further discovery in this case. (Mot. to Comp., Ex. 6). Plaintiffs now ask the Court to compel the Coast Guard to produce a representative for live deposition testimony, and the United States seeks a protective order relieving it from any obligation to do so.

## II. Legal Standard

RCFC 26(b)(1) governs the scope of permissible discovery, constraining parties to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Whether discovery is proportional to the needs of the case requires considerations of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Under RCFC 30(b)(6), a party may notice deposition to a government agency, which then must designate an appropriate representative to testify on its behalf. The notice "must describe with reasonable particularity the matters for examination" before the agency is required to designate a representative to be examined. RCFC 30(b)(6); *see also Alexander v. F.B.I.*, 186 F.R.D. 137 (D.D.C. 1998). Once this burden is satisfied, the government agency then "has an affirmative duty to make available persons who will be able to give complete, knowledgeable and binding answers on its behalf." *Dairyland Power Co-op. v. United States*, 79 Fed. Cl. 709, 714 (2007) (internal quotations omitted). The representative is obligated to be prepared to testify "about information known or reasonably available to the organization." RCFC 30(b)(6); *see also AG-Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 80 (2008).

## III. Analysis

The parties' motions place two issues before the Court. First, the parties disagree as to whether discovery is available in this case. Second, assuming for the sake of argument that discovery is permitted, the parties disagree over the proper scope of that discovery.

*A. Availability of Discovery in This Case.*

Plaintiffs argue that they are entitled to discovery because they elected to bring this military pay action before this Court in the first instance, rather than first seeking review from the Coast Guard Board for Correction of Military Records. (Mot. to Comp. at 6). Plaintiffs urge

---

[1] The Court reserved a decision on the appropriate standard of review for consideration in concert with the parties' cross-motions for summary judgment. (ECF No. 22 at 2).

that limited discovery was contemplated by this Court's July 2, 2019, Order. (Pls.' Reply at 7 (citing ECF No. 22)). The United States argues that discovery outside the administrative record is categorically prohibited because this is a military pay case, which must proceed only on the administrative record. (Def.'s Resp. at 1 ("[P]laintiffs' strategic decision to bypass review of their claims by a Coast Guard correction board does not entitle them to discovery in this Court."), 12 ("Pursuing *de novo* review of their claims in this court, however, does not entitle plaintiffs to discovery.")).

      i. The Court's July 2, 2019 Order Does Not Rule on the Availability of Discovery in This Case.

On June 27, 2019, the Court heard oral argument on whether this case should proceed on motions for summary judgment or motions for judgment on the administrative record. (*See* ECF No. 22 at 2 (holding the case should proceed on motions for summary judgment)). During oral argument, discussion ensued regarding whether Plaintiffs would be entitled to discovery. Ultimately the Court entered an order allowing Plaintiffs to file a motion to compel to address that issue. (*Id*.). Despite vehement contentions to the contrary, that Order provides no support for either party's position on whether discovery is available in this case, much less the scope of the contemplated discovery.

      ii. Discovery is Not Categorically Prohibited in Military Pay Cases.

Plaintiffs argue that, like in *Lippmann v. United States*, 127 Fed. Cl. 238 (2016), fact discovery is necessary to determine "whether the CRSP process was conducted pursuant to a reduction in force in view of the Coast Guard's pre-litigation understanding and use of that term." (Mot. to Comp. at 7). Plaintiffs further contend that because the evidence they seek was unavailable below, this Court's review of Plaintiffs' claims is not limited to the administrative record. (*Id*. at 8 (citing *Wyatt v. United States*, 23 Cl. Ct. 314, 319 (1991)). The United States counters that *Lippmann* was incorrectly decided and cites several cases in support of its argument that this Court's review is limited to the administrative record in military pay cases.[2] (Def.'s Resp. at 13). While there is merit to both sides' arguments, Plaintiffs place too much weight on *Lippman*, even if correctly decided, and the cases to which the United States cites do not squarely address the issue presented in this case.

In *Lippmann v. United States*, 127 Fed. Cl. 238 (2016), a servicemember challenged the Coast Guard's decision to involuntarily retire him pursuant to the recommendation of a CRSP. As here, that servicemember elected to bypass a military records corrections board and instead brought a challenge in this court. *Id*. at 242. The Court held that it would review the servicemember's claims *de novo*. *Id*. at 250. Further, the Court held in abeyance the parties' cross-motions for summary judgment pending further briefing on whether the servicemember was entitled to a hearing before an Enlisted Personnel Board pursuant to 14 U.S.C. § 357, the

---

[2] The United States contends *Lippmann* is incorrect and "contrary to other decisions of the Federal Circuit, this Court, and this Court's predecessor[.]" (Def. Resp. at 13 (citing *Allphin v. United States*, 758 F.3d 1336 (Fed. Cir. 2014); *Bateson v. United States*, 48 Fed. Cl. 162 (2000), *aff'd,* 64 F. Appx. 244 (Fed. Cir 2003); and *Wyatt v. United States*, 23 Cl. Ct. 314 (1991))).

3

same "reduction in force" statute at issue in this case. *Id*. at 251–52. In concluding that supplemental briefing on the issue was necessary, the Court determined that "a more complete factual record [was] needed to inform the Court's analysis of the parties' cross-motion for summary judgment on [the issue of whether the Secretary of the Department of Homeland Security actually ordered a reduction in force]." *Id*. at 252. However, *Lippmann* was dismissed by stipulation of the parties prior to resolution of the § 357 issue. In any event, *Lippmann* provides little guidance as to whether discovery is available or warranted here.

In *Allphin v. United States*, 758 F.3d 1336 (Fed. Cir. 2014), approximately 300 plaintiff-servicemembers were separated from the Navy through an Enlisted Retention Board ("ERB"). The Federal Circuit agreed that the decisions to convene the ERBs and discharge servicemembers were nonjusticiable, but reviewed whether creation of the ERB exceeded the Navy's statutory authority. *Id*. at 1341–42. On this issue, the Federal Circuit affirmed judgment on the administrative record for the United States, finding the Navy did not exceed its statutory authority in implementing the ERBs. *Id*. at 1342. The Federal Circuit also affirmed the Court of Federal Claims' denial of the plaintiffs' motion to supplement the administrative record with four documents relevant only to the nonjusticiable claims, finding no abuse of discretion in that decision. *Id*. at 1344. Ignoring that *Allphin* was adjudicated on the administrative record, the United States highlights that the Federal Circuit affirmed the Court of Federal Claims' decision to deny supplementation of the administrative record and argues that this case contradicts *Lippman*. (Def.'s Resp. at 13). The Court sees no irreconcilable tension between the two cases and finds *Allphin* largely inapplicable to the discovery dispute at hand.

In *Bateson v. United States*, 48 Fed. Cl. 162, 164 (2000), *aff'd,* 64 F. Appx. 244 (Fed. Cir 2003), Air Force officers were involuntarily separated as a result of non-selection for promotion. The plaintiffs contended the selection boards were conducted in violation of statutory and regulatory procedural requirements. *Id*. at 163. Several plaintiffs did not pursue administrative remedies with the Air Force Board for the Correction of Military Records ("AFBCMR"). *Id*. For those plaintiffs, the administrative record before the Court comprised only of those plaintiffs' personnel files. *Id*. The Court considered two issues: (1) whether those plaintiffs who did not pursue administrative remedies before the AFBCMR were entitled to discovery, and (2) whether those plaintiffs who had presented claims to the AFBCMR were entitled to conduct discovery in order to supplement the existing administrative record. *Id*. at 164. The Court determined that "[i]n cases where an officer has not pursued an administrative appeal the officer has waived the right to make an administrative record and has to rely [on] a subsequent action for judicial review on the evidentiary record before the deciding official." *Id*. at 164. "[W]here the evidentiary record is found to be inadequate," the Court explained, "it is not this Court's role to fill in the evidentiary gaps." *Id*. at 165 (citing *Long v. United States*, 12 Cl. Ct. 174, 177 (1987)). In the *Bateson* Court's view, plaintiffs may submit new evidence in such cases "only if, (1) the evidence was unavailable below or (2) if there is a strong showing of bad faith or improper behavior which creates serious doubts about the integrity of the administrative action." *Bateson*, 48 Fed. Cl. at 165 (citing *Wyatt v. United States*, 23 Cl. Ct. 314, 319 (1991)).

In *Wyatt*, 23 Cl. Ct. 314, the Claims Court examined a servicemember's challenge to his involuntary separation. Our predecessor court held that the servicemember was not required to present his claims for correction of military records to an administrative body prior to bringing

4

them in the Claims Court.[3] *Id*. at 318. However, the Court also held that the servicemember did not have the right to present new evidence in the Claims Court unless the evidence was unavailable to the deciding official or the plaintiff demonstrated bad faith or improper behavior. *Id*. at 319. Nevertheless, *Wyatt* is readily distinguishable from this case. The Court in *Wyatt* reviewed a battalion commander's decision to discharge the servicemember for unsatisfactory performance. *Id*. at 320. The Court found the battalion commander's decision, conducted under a regulation that clearly committed the action to the commander's discretion, was not arbitrary, capricious, in bad faith, or unsupported by substantial evidence, or contrary to law. *Id*. at 320–322. Here, the plaintiffs were involuntarily retired by a panel formed pursuant to a different statute and the underlying claim pertains to the authority of that panel to retire the plaintiffs, not the substance of the panel's decision-making process.

In both *Bateson* and the present dispute, the plaintiffs filed a motion seeking to conduct discovery. *Id*. at 163; (Mot. to Comp.). However, the topics of discovery sought in *Bateson* can be distinguished from the discovery sought here. In *Bateson*, the plaintiffs sought discovery related to the proceedings before the board. *Id*. at 163, and n.3 (seeking discovery "concerning the involvement of board members in board proceedings[,]" the "'quality control' and auditing process[,]" "statistical analyses of promotion board results" to compare selection board panels, and clarification on the process itself, including the meaning of certifying signatures and "secretarial approval."). Here, Plaintiffs primarily seek discovery to determine the interpretation of the relevant statute by the agency in order to determine whether the implementation of the CRSPs was statutorily permissible. (Mot. to Comp. at 8–9). In this case, Plaintiffs do not attempt to nitpick adherence to proper procedure by which they were selected for involuntary separation; they reject the entire process as invalid and seek to gather evidence that was unavailable below. (*Id*. ("Plaintiffs did not have the option to bring claims that their involuntary retirements through the CRSP violated their statutory rights before a military corrections board[.]")).

The Court finds the standard set out in *Bateson* instructive. Discovery is available in military pay cases brought for the first time in the Court of Federal Claims where "(1) the evidence was unavailable below or (2) if there is a strong showing of bad faith or improper behavior which creates serious doubts about the integrity of the administrative action." *Bateson*, 48 Fed. Cl. at 164, *aff'd,* 64 F. Appx. 244 (citing *Wyatt*, 23 Cl. at 319). Therefore, the United States' Motion for a Protective Order must be denied because it incorrectly seeks relief on the basis discovery is categorically unavailable in military pay cases.

This conclusion is supported by the same rationale that allows supplementation of the administrative record in standard military pay cases. "[W]hen a service member does pursue [relief from a military corrections board], the Court of Federal Claims reviews the Board's action under the same standard as any other agency action." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). That is, "whether the decision is arbitrary, capricious, unsupported by

---

[3] Unlike other circuits, this Court may hear claims for injunctive relief prior to exhaustion of administrative remedies. *Heisig v. United States*, 719 F.2d 1153, 1155 (Fed. Cir. 1983); *contra Navas v. Gonzales Vales*, 752 F.2d 765, 796 (1st Cir. 1985) (finding servicemember-plaintiff's claim nonjusticiable where he failed to exhaust intraservice administrative remedies prior to seeking judicial review); *Ballenger v. Marsh*, 708 F.2d 349, 350–51 (8th Cir. 1983) (same); *Diliberti v. Brown*, 583 F.2d 950, 951 (7th Cir. 1978) (same).

substantial evidence, or contrary to law." *Porter v. United States,* 163 F.3d 1304, 1312 (Fed. Cir. 1998). "The focus of judicial review of agency action remains the administrative record, *which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA.*" *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (emphasis added). However, the Court does not "[lose] its ability to hold evidentiary hearings to determine jurisdictional facts, or to consider 'extra-record' evidence in extremely limited situations." *Metz*, 466 F.3d at 998. In this extraordinary case, the Plaintiffs should not be denied the opportunity to supply the Court with "extra-record" evidence that was unavailable to support their claim in the administrative proceedings below.

### B. Discovery Is Limited to the Coast Guard's Interpretation of 14 U.S.C. § 357.

In their Notice of Deposition, Plaintiffs proposed twelve topics of potential examination for their requested RCFC 30(b)(6) deposition. (*See* Pls.' Not. of Dep., ECF No. 39-4). As the Court expressed during the August 6, 2020 oral argument, while the Court is convinced limited discovery is appropriate in this case, it will defer ruling on whether the twelve topics proposed fall within this limited scope. For now, the Court defers resolving issues of the scope of deposition topics in favor of negotiations between the parties who, presumably, are in the best position to determine with specificity those topics that are necessary to illuminate how the Coast Guard interpreted 14 U.S.C. § 357 prior to litigation in this case. However, the Court acknowledges some discussion may aid those negotiations and ultimately render Plaintiffs' Motion to Compel moot.

The parties agree that this case turns on whether the Coast Guard conducted a reduction in force pursuant to 357(j), or whether retirement using the CRSP was unlawful because there was no reduction in force. (*See* Mot. to Comp. at 1; Def.'s Resp. at 7). In requesting that the Coast Guard produce a representative for deposition, Plaintiffs seek to gain context for the documents the United States has already produced, as well as context for documents contained in the "administrative record" compiled by the United States. (Pls.' Reply at 8–9). The Court finds that additional discovery is warranted to determine the Coast Guard's interpretation of "reduction in force," which may be gleaned from prior uses of the CRSP, and/or prior Coast Guard "workforce flow" tools under 357(j) within a reasonable amount of time. Additionally, insight into the decision-making process that resulted in a public messaging campaign emphasizing that the CRSP was a not reduction in force—a message directly contrary to the position the United States now takes—is likely to be relevant to the Plaintiffs' claim and proportional to the needs of the case.

While the Court makes no decision as to compelling discovery on particular topics identified by Plaintiffs, the Court hopes its discussion of these issues will guide the parties to appropriate boundaries for limited discovery.

### IV.   Conclusion

Based on the foregoing, the United States' Motion for a Protective Order (ECF No. 46) is **DENIED**. The Court **DEFERS** resolution of Plaintiffs' Motion to Compel (ECF No. 39), pending additional discussions between the parties.

**On or before August 24, 2020**, the parties shall meet and confer in good faith to come to an agreement regarding the topics and form of discovery. **On or before August 27, 2020**, the

parties shall file a joint status report apprising the Court of the results from those discussions, including whether areas of disagreement necessitate a ruling on Plaintiffs' Motion to Compel. This status report shall also contain a proposed schedule for further proceedings, including an agreed schedule for dispositive motions.

**IT IS SO ORDERED.**



s/   David A. Tapp
DAVID A. TAPP, Judge