# In the United States Court of Federal Claims

No. 18-923C
Filed: December 8, 2021

---

|  |  |
|---|---|
| **TONIA TIPPINS, et al.,** | |
| *Plaintiffs,* | |
| **v.** | |
| **THE UNITED STATES,** | |
| *Defendant.* | |

---

*Nathan S. Mammen*, with whom were *Ragan Naresh* and *Emily M. Scott*, Kirkland & Ellis LLP, Washington, D.C., for Plaintiffs.

*Douglas G. Edelschick*, Senior Trial Counsel, with whom were *Marin F. Hockey*, Deputy Director, *Robert E. Kirschman, Jr.*, Director, *Brian M. Boynton*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *LCDR Justin R. Jolley*, Deputy Chief, and *Brian Judge*, Chief, Office of Claims & Litigation, U.S. Coast Guard, Of Counsel, for Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**TAPP, Judge.**

Before the Court is the United States' Motion for Reconsideration, as well as competing memoranda regarding the scope of relief should reconsideration be denied. (Def.'s Mot. to Recons., ECF No. 84). In its bid for reconsideration, the United States challenges portions of the Court's July 13, 2021 Opinion granting summary judgment to Tonia Tippins, Derrik Magnuson, George Holloway, Jennifer Rehberg, Glenda Smithleeth, and M. Allen Bumgardner (collectively "Plaintiffs"). *See generally*, *Tippins v. United States*, 154 Fed. Cl. 373 (2021) (docketed at ECF 75). Notably, the United States does not request that the Court reconsider its alternate finding that even if 14 U.S.C. § 357 was ambiguous, the Coast Guard has not offered an interpretation of the statute which is entitled to *Chevron* deference. (Def.'s Mot. to Recons. at 20 n.3).[1] The Court first addresses the Motion for Reconsideration.

---

[1] (*See also* Tr. of Oral Arg. at 41–42, ECF No. 74; Tr. of Hearing on Mot. to Recons. at 19:4–12, ECF No. 89.)

## I.      The United States' Motion for Reconsideration

There are two statutes at issue in this case. The first, 10 U.S.C. § 1169, protects honorably serving enlisted members of the armed forces. That statute provides simply that regular enlisted members of an armed force may not be discharged before their term of service expires, except as prescribed by the secretary leading the relevant armed force—in this case, the Secretary of Homeland Security (the "Secretary"). The second operative statute, which is specific to the United States Coast Guard, provides in part that "[w]hen the Secretary orders a reduction in force, enlisted personnel may be involuntarily separated from the service without the [Enlisted Personnel] Board's action." 14 U.S.C. § 357(j). Enlisted Personnel Board actions involve performance issues of individual service members and are not at issue here.[2] This statutory structure safeguards the service of enlisted members of the Coast Guard. Except in individual cases brought before an Enlisted Personnel Board, enlisted Coast Guard personnel cannot be involuntarily discharged except pursuant to a reduction in force ("RIF") ordered by the Secretary. This statutory structure frames Plaintiffs' claim.

Beginning in 2010 and continuing through 2014, the Secretary authorized the Coast Guard to utilize a newly crafted mechanism entitled Career Retention Screening Panels ("CRSPs"). (*See, e.g.*, Pls.' MSJ Ex. 7 at p. 8–9, ECF No. 62-7).[3] The stated purpose of the CRSPs was to reshape the enlisted ranks to provide for enhanced upward mobility. (AR 27, (CRSP designed to stimulate workforce flow and improve enlisted advancements), AR 26 (describing the 2011 and 2012 CRSPs as a "performance-based enlisted workforce management tool.")).

The Secretary's initial CRSP authorization in 2010 did not reference a "reduction in force" and troublingly, the Coast Guard publicly expressed to its enlisted personnel that the

---

[2] U.S. Coast Guard policy speaks to the use of Enlisted Personnel Boards in cases involving "the involuntary separation, ineligibility for reenlistment, and reduction in rate for incompetence." Enlisted Personnel Administrative Boards Manual (PSCINST M1910.1) p. 3, U.S. Coast Guard, (published June 2014), *available at* https://www.dcms.uscg.mil/Portals/10/CG-1/psc/psd/docs/EPAB%20(Final%20Revised%20August%202017).pdf?ver=2018-03-30-101707-787 (last visited December 8, 2021).

[3] As noted in the Court's July 13, 2021, Memorandum Opinion and Order, Plaintiffs attached as an exhibit to their summary judgment briefing the Administrative Record from *Lippmann v. United States*, Case No. 15-192. The United States did not object. That case involved a single former enlisted Coast Guard member and has substantial factual commonality with this case, including the initial 2010 Secretary of Homeland Security's approval of the inaugural CRSP. The *Lippmann* record contained a document inexplicably omitted from the Administrative Record of this case. To avoid confusion between the records, when referring to the *Lippmann* record the Court will cite to the PDF pagination as it appears in the Court's blue CM/ECF stamp in the header of Plaintiffs' Motion for Summary Judgment Exhibit 7. For example, when referring to the *Lippmann* AR, the Court would cite to the cover page, which simply reads "EXHIBIT 7," as "(Pls.' MSJ Ex. 7 at p. 1)." Citations to the Administrative Record in this case are simply (AR __).

authorized CRSP service record review and resulting forced retirements were not a RIF. (Pls.' MSJ Ex. 7 at p. 8–9; Pls.' MSJ Ex. 9). In fact, the Coast Guard formulated and issued to its members, including those enlisted personnel who would later be subject to involuntary retirement, its policies and procedures governing the initial CRSP *prior* to the Secretary's approval. (*Compare* AR 1 (Internal Comms Bulletin issued August 19, 2010) *with* Pls.' MSJ Ex. 7 at 8–9 (Secretary's approval of the 2010 CRSP on Sept. 21, 2010)). Given that sequence, and in the absence of any record evidence that the Secretary reviewed CRSP policies and procedures, any claim that the Secretary considered and analyzed whether the CRSP was a RIF under 14 U.S.C. § 357(j) lacks credibility.

In the years after 2010, the Coast Guard's request for Secretarial approval referenced "reductions in force" but reflected no analysis concluding that the CRSP constituted a RIF. (*See, e.g.*, AR 27–28). Neither the Coast Guard nor the Secretary has produced contemporaneous documents that establish the CRSPs were simply RIFs by another name. Neither does the uncontested record disclose any analysis suggesting that the Secretary (or the Coast Guard) contemporaneously considered that the CRSPs were a statutorily authorized RIF.

In fact, in the original memorandum from the Commandant of the Coast Guard, setting forth the policies and procedures that would guide the CRSP and preceding the Secretary's CRSP approval, the Commandant acknowledged "[w]hile officer management tools are clearly defined by law and policy, similar workforce shaping tools *do not exist* for the enlisted workforce." (AR 1 (emphasis added)). Lastly, the Coast Guard did not proffer a comparison of the CRSP process to prior RIFs that, at least, might have suggested some degree of similarity from which the Court could conclude that the two were essentially the same. The Coast Guard, however, *now* alleges, rather conveniently, that the CRSPs were in fact a RIF. In doing so, the Coast Guard disavows its own contemporaneous messaging that the CRSPs were not a RIF.

In seeking reconsideration, the United States continues to dispute the Court's interpretation of 14 U.S.C. § 357(j), which authorizes RIFs, and whether that statute justifies the Coast Guard's separation of servicemembers via CRSPs. (Def.'s Mot. to Recons. at 4–19); *Tippins*, 154 Fed. Cl. at 378 (concluding that § 357(j) is unambiguous and the Coast Guard's interpretation is not entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). The United States asks the Court to reconsider its interpretation that the phrase "reduction in force" includes the "elimination of positions or jobs, not merely the separation of personnel." (Def.'s Mot. to Recons. at 4–19); *Tippins*, 154 Fed. Cl. at 378.

The United States' Motion raises four primary grounds on which the Court should reconsider its prior Opinion. (Def.'s Mot. to Recon. at 1–2). The United States asserts: (1) the Court's interpretation is inconsistent with an alternative plain language interpretation based on dictionary definitions and ignores Congress's historical use of the phrase "reduction in force"; (2) the Court erred by relying on case law that interprets civilian statutes; (3) the Federal Circuit has not defined "reduction in force"; and (4) the Court should look to 10 U.S.C. § 1174a, a military statute, for its plain language interpretation of "reduction in force." (*Id.* at 5–19). Though the United States maintains that the Secretary's interpretation of 14 U.S.C. § 357(j) is

entitled to deference under *Chevron* step two, its Motion focuses solely on the Court's plain language determination under *Chevron* step one. (*Id.* at 20 n.3).[4]

The United States' first argument refers to its merits brief, which offers a single dictionary definition of "force." (*See* Def.'s Cross-MSJ at 15, ECF No. 67 (citing to Merriam-Webster's Collegiate Dictionary 489 (11th ed. 2005)).[5] To buttress its first argument, the United States isolates the last word within the phrase "reduction in force." (Def.'s Mot. to Recons. at 5–6). The United States offers no dictionary definition of the complete phrase. Nor does the United States focus on "reduction." Instead, utilizing its chosen dictionary definition of "force," the United States urges the Court to construe the operative wording of § 357(j) as meaning a reduction in "terms of people or troops, not positions or billets." (*Id.*). Utilizing this selective approach, the Court would presumably find that the Coast Guard's involuntary retirement of several hundred enlisted members, which did not have the effect of reducing the total number of authorized billets within the Coast Guard, was lawful.

In its first argument, in addition to urging the Court to go dictionary shopping, the United States adds that Congress has historically utilized the phrases "reduction in personnel" and "reduction in force" interchangeably. (*Id.* at 6). In doing so, however, the United States cites to statutes arising under Title 5 of the United States Code, which the United States characterizes as relating to "re-codification of laws related to civilian Federal employees." (*Id.*). This renders the United States' first argument inconsistent with a fundamental tenet of its second argument. In the page following its suggestion that the Court look to Title 5, the United States urges the Court to eschew the application of statutes governing Federal civilian employees because they are incongruous with those regulating Coast Guard members. (*Id.* at 7–8).

Though the United States urges reliance on its favored dictionary, the Court need not pick from this or other dictionaries in fashioning its interpretation of "reduction in force," a relatively simple phrase. *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 226 (courts need not defer to "the agency's choice among available dictionary definitions" and may look at other "contextual indications[.]"). The Court's finding that the phrase "reduction in force" is unambiguous considers the entirety of the term rather than its subparts. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme because the same terminology is used elsewhere in a context that makes its meaning clear[.]"). Congress could have easily expressed the phrase in a manner more attuned to the United States' litigation position. Had it intended to do so, Congress could have chosen some other version of the phrase, perhaps a realignment, repositioning, reorganization, restructuring, redeployment, reformation, reshuffling, or manipulation of the "force." It did not. Congress chose to limit the discharge of

---

[4] The United States does not urge the Court to reconsider its *Chevron* step zero analysis. *Cf. Tippins*, 154 Fed. Cl. at 383 (holding that even if the Court were to find 14 U.S.C. § 357(j) ambiguous, the Coast Guard did not offer an interpretation of the statute that is entitled to *Chevron* deference).

[5] In its Motion to Reconsider, the United States cites to an earlier version of the same dictionary utilizing a similar definition. (Def.'s Mot. to Recons. at 5).

enlisted service members to situations involving individual conduct or by a reduction in force. In the latter instance, the Secretary is statutorily required to "order" a RIF. 14 U.S.C. § 357.

In its second and third arguments, the United States points out that the Federal Circuit has not assigned an all-encompassing definition to the phrase "reduction in force." (Def.'s Mot. to Recons. at 12). The United States urges the Court to reject the Circuit's interpretation and usage of that phrase as circumscribed to Merit Systems Protection Board ("MSPB") appeals and Office of Personnel Management regulations. (*Id.* at 12–17 (citing cases the Court relied on)). The Federal Circuit's usage, though not involving RIFs within a military context, remains useful in the vacuum created by the complete absence of a definition unique to 14 U.S.C. § 357. The United States also argues that the Court should not have relied on *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990), despite previously citing that case in support of its interpretation in analogous litigation before this very Court. (*Compare* Def.'s Mot. to Recons. at 15 (arguing the Court erred in its reliance on *Barnes*) *with Lippmann v. United States*, Case No. 15-192, Def.'s Mot. to Dismiss at 22, ECF No. 10 (citing *Barnes* in support of its argument)). Fourth and finally, for the first time, the United States cites to 10 U.S.C. § 1174a, arguing that the Court should attempt to read that statute in harmony with 14 U.S.C. § 357(j). (Def.'s Mot. to Recons. at 17–19). Nothing within that statute persuasively informs the Court's decision. *See* 10 U.S.C. § 1174a (permitting the Secretary to establish special separations benefits programs in which eligible members may opt-in). Both § 1174a, and its companion statute which it references, 10 U.S.C. § 1175, concern voluntary separation benefits and incentives. That is not the situation here.

The Court declines to adjust its prior conclusions. The United States' arguments, individually and collectively, are unconvincing. Moreover, to the extent that the United States continues to press that "reduction in force" is capable of multiple interpretations to include a reduction in a body of persons, personnel, positions, troops, labor force, jobs, or billets, each at the unbridled discretion of the Coast Guard, the Court rejects such an amorphous interpretation. (*See* Def.'s Mot. to Recons. at 7 ("[W]e have argued that a 'reduction in force' . . . is sufficiently broad to include a reduction in positions, a reduction in personnel, or both . . . .")). The Court again notes that, while not particularly consequential at summary judgment, the Coast Guard's own contemporaneous statements sharply undercut the position it now stakes in seeking reconsideration.

Initially, the Coast Guard Commandant advised the Secretary that its newly conceptualized CRSP was required to address an "imbalance" in junior and senior enlisted service and retention rates. The Commandant did not request, nor did the Secretary authorize, a RIF. A high-level administrative Coast Guard office messaged enlisted members that the 2010 process "was not a RIF" and cautioned other members of the Coast Guard that "we need to ensure that [the CRSP] is not associated with a RIF."[6] (Pls.' MSJ Ex. 9). In subsequent years, the Coast Guard's written request for CRSP approval to the Secretary referenced a RIF but noted

---

[6] Though the Coast Guard now seeks to disavow these earlier statements to its service members, such post hoc rationalizations carry little, if any weight. If in fact, the Coast Guard was purposefully misleading its own enlisted personnel, as the United States seems to now suggest, such efforts are disquieting.

that the CRSP process excluded the use of "reduction in force" language. (*See, e.g.,* AR 53). The written policies guiding CRSP procedure never mentioned a RIF. (*See* AR 69–81).

These characterizations cannot be ignored: the CRSP was not intended to reduce the size of the Coast Guard but rather to account for "upward mobility and flow" concerns and thereby provide for improved opportunities for junior non-commissioned personnel. (*See* AR 27 (The purpose of the 2011 CRSP was "to strategically rebalance the force toward a more upwardly mobile, performance-based demographic.").[7] Based only on the Coast Guard's own contemporaneous statements, the Court has no concern regarding the sagacity of its Opinion and Order granting summary judgment in Plaintiffs' favor.

Here, not only did the Secretary fail to order a reduction in force consistent with the plain meaning of that phrase, the Secretary and the Coast Guard purposefully avoided the phrase and publicly rebuffed any notion that the CRSPs were associated with a RIF. The CRSPs accomplished exactly what the Coast Guard expressed was its intent: the reshuffling of enlisted personnel by forcing the retirement of senior enlisted personnel to enable the upward mobility of more junior personnel. Any reduction in the overall number of enlisted personnel was incidental to the plainly stated purposes of realigning the senior enlisted ranks to promote the upward mobility of junior service members.

This is also not an instance in which Congress authorized early retirements, except in specified circumstances, despite having done so in statutes pertaining to other branches. In fact, for the other branches, Congress delegated broader authority to shape their forces. Under 10 U.S.C. § 638(a)(1), "[a] regular officer on the active-duty list of the Army, Navy, Air Force, Marine Corps, or Space Force may be considered for selective early retirement by a selection board . . .."). Those service branches have lawfully invoked § 638(a) to conduct reductions in force. *Crumley v. United States*, 133 Fed. Cl. 607, 609 (2017), *aff'd*, 738 F. App'x 1020 (Fed. Cir. 2018) ("In 2011, the USAF conducted a reduction-in-force ('RIF'), pursuant to 10 U.S.C. § 638(a) . . .."). Section 638 also authorizes "Selective Early Retirement Boards" ("SERBs"), which the branches have historically used as a workforce shaping tool, eerily similar to the CRSPs in this case. *See Christian v. United States*, 46 Fed. Cl. 793, 797 (2000) ("Under [§ 638], Regular Army Lieutenant Colonels (LTCs) twice considered but not selected for promotion to Colonel and not placed on another promotion recommendation list may be considered for mandatory early retirement by a [SERB].").

The Coast Guard's absence from 10 U.S.C. § 638 is conspicuous. Likewise, 14 U.S.C. § 357 did not include the broad language contained in an earlier statute which would have plausibly authorized the Coast Guard's use of CRSPs as a force reshaping tool. *Compare* 10 U.S.C. § 1169 (authorizing early discharge of regular enlisted members under circumstances "prescribed by the Secretary[.]") *with* 14 U.S.C. § 357. For the Coast Guard, Congress enhanced

---

[7] In 2015, following the last of the CRSPs, the Coast Guard noted the success of the program: "For the past five years, the Coast Guard has sought and received authorization from the Secretary of Homeland Security (DHS) to convene a CRSP in order to increase workforce flow, address high retention issues through the involuntary retirement of selected enlisted members, and to reduce the size of the retirement eligible enlisted workforce." (AR 164).

the limitation on discharge through § 357 by referencing a selection board and limiting the Secretary's authority to involuntarily separate enlisted service members in two narrow circumstances—pursuant to Enlisted Personnel Board decisions or a RIF.

The Court recognizes that it writes on a blank slate regarding this issue. It agrees that the Federal Circuit has not, within the narrow context of these facts, defined "reduction in force" as that phrase is used in 14 U.S.C § 357(j). Consequently, the Court has resorted to the analogous treatment of the term within the civilian context. Relying on the persuasive authority of decisions from other courts, taken together with the absence of contemporary supporting documentation by the Secretary, the contemporaneous statements of the Coast Guard, and statutes authorizing every other military branch to consider selective early retirements, the Court continues to believe that the 2010–2015 CRSPs were not conducted as part of a RIF and that the phrase "reduction in force" necessarily means the elimination of positions or jobs.

## II.   Appropriate Remedies

Having reaffirmed that Plaintiffs are entitled to summary judgment, the Court now addresses what must come next. Plaintiffs seek certification of a class to pursue the identical claims presented in the Complaint. (Tr. of Hearing on Mot. to Recons. at 43:13–23). Long before the undersigned's involvement, and in an unusual move, the parties agreed that any issue related to certification of a class should await a determination on the merits of Plaintiffs' claims. (*Id.* at 41:11–43:23). That posture presents some obstacles to the efficient resolution of this matter.

In its Motion for Reconsideration, the United States suggests two mutually exclusive avenues to expedite resolution. First, should the Court reverse its conclusion and find that 14 U.S.C. § 357(j) and the operative phrase "reduction in force" are indeed ambiguous, the United States asserts that the Court must remand this case to the Coast Guard for "additional explanation and analysis of the statutory ambiguity." (Def.'s Mot. to Recons. at 20). Second, the United States suggests that if the Court were to deny the United States' motion in its entirety, the Court should enter judgment for the six named plaintiffs and direct the Coast Guard to correct the plaintiffs' military records. (Id. at 20–22). Plaintiffs agree with the second option in principle but seem to suggest that the Court, rather than the Coast Guard, should attempt tabulations of backpay. (Pls.' Resp. at 17, ECF No. 85).

As explained above, the Court declines to reconsider its holdings that 14 U.S.C. § 357 is unambiguous and that statute does not support the Coast Guard's actions here. However, the Court agrees that the Coast Guard is better poised to evaluate the facts and circumstances of each plaintiff and calculate their entitlement to relief. But, in recognizing that the United States is considering its options for appellate review, the Court is compelled to explain that even if it were to find § 357 ambiguous, remand would be unproductive.

As previewed above, the United States argues that "given the Court's ruling that the Secretary has not yet sufficiently articulated a reasonable interpretation, the appropriate remedy would be a remand to the Secretary for additional explanation and analysis of the statutory ambiguity." (Def.'s Mot. to Recons. at 20 (citing *Negusie v. Holder*, 555 U.S. 511, 523 (2009) and *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907–08 (2020)). The Court disagrees.

"It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Regents of the Univ. of California*, 140 S. Ct. at 1907 (quoting *Michigan v. E.P.A.*, 576 U.S. 743, 758 (2015)). If the stated grounds for agency action are inadequate, "a court *may* remand" for the agency to either expand upon its analysis or take new action. *Id*. (emphasis added). If the Court remands for further analysis, the agency may provide additional explanation of its reasoning "*at the time of the agency action.*" *Id*. (emphasis in original) (internal quotation and citation omitted). An agency may amplify its articulation of a prior conclusory observation, or elaborate on its reasons, "but may not provide new ones." *Id*. at 1908. When the agency has not exercised its discretion to interpret a statute, the normal course of action is for the Court to remand. *Negusie*, 555 U.S. at 523.

Initially, the Court notes the deliberate use of the Supreme Court's permissive modal verb—a court *may* remand to the agency. *Michigan*, 576 U.S. at 758. Putting aside the implicit grant of discretion, as the Court explained in *Tippins*, 154 Fed. Cl. at 384, the Coast Guard offered only the most bare-bones conclusory statement without any considered analysis or judgment. In 2010, the Secretary did not use the phrase "reduction in force" in the memo authorizing the CRSP. Therefore, any additional reasoning or explanation could only be considered "new," rather than elaborating on or further articulating a stated reason. *See Regents of the Univ. of California*, 140 S. Ct. at 1908. If the Court were to remand this case and permit the Coast Guard to offer "analysis" of its position from 2010, it would undermine "confidence that the reasons given are not simply convenient litigating positions." *Id*. at 1909 (cleaned up). Additionally (and relatedly), remand would allow a new Secretary of Homeland Security to invoke new justifications and undertake fresh analysis over a decade after the original decision to institute CRSPs. Permitting the Secretary to invoke such "belated justifications" would disrupt the Court's judicial review function and force "both litigants and [the Court] to chase a moving target." *Id*. (internal citations and quotations omitted). Thus, even had the Court found the statute ambiguous, the United States' request for remand would be denied because the United States fails at *Chevron* step zero.

The Court concludes that remand would be inappropriate as a practical matter, but also as a jurisprudential concern. Rote remand scenarios such as those urged by the United States in this case only encourage agency decision-makers to initially avoid articulating justifications in any degree of detail. Why provide a full explanation of the agency's reasoning if, when later challenged, a second opportunity is routinely provided to supply a more fulsome rationale? Especially when, by rendering a decision, the reviewing court might eventually hand the agency a skeleton key to unlock the door to its original intended destination. Here, the Court retains discretion to prevent such a scenario where it is clear that any "additional" analysis would only consist of post hoc rationalizations. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (the reviewing court has "considerable discretion" when the agency seeks remand either to correct errors or provide additional analysis support a decision).

In this case, the record is unequivocal in stating the decision to utilize CRSPs to massage the composition of the Coast Guard's enlisted ranks. Nothing within the record supports the conclusion that the Secretary intended to order a RIF but simply failed to articulate that intent. On the contrary, the Secretary acquiesced to the use of a new administrative policy intended to force senior enlisted members to retire from their service to the United States. Had the Secretary

indicated intent to declare a RIF, not just invoke 14 U.S.C. § 357 as a pretext, then remand might be appropriate to expound on the annual justifications. However, that is not the situation the Court finds here. Absent documentation in the administrative record supporting an intention to declare a reduction in force, the current Secretary has nothing to expound upon.

In summary, even if the Court were to find the statute ambiguous and that the Coast Guard had failed to offer an interpretation, the Court would not remand for further analysis. The Court has both practical and jurisprudential concerns, but most importantly, the facts of this case would not support giving the Coast Guard a second bite at the proverbial apple.

### III.    Conclusion

The Court stands by its analysis in *Tippins v. United States*, 154 Fed. Cl. 373 (2021) (docketed at ECF 75). Consequently, the Court orders the following:

(1) The United States' Motion for Reconsideration, (ECF No. 84), is **DENIED**.

(2) Pursuant to RCFC 54(b), there being no just reason for delay, the Clerk is **DIRECTED** to enter judgment for the six named plaintiffs listed below. This action shall remain open to allow further collective action proceedings.

(3) Consistent with the Court's decision in *Tippins v. United States*, 154 Fed. Cl. 373 (2021), the United States Coast Guard is **ORDERED** to expeditiously correct the military records for:

    a.  Tonia Tippins;

    b.  Derrik Magnuson;

    c.  George Holloway;

    d.  Jennifer Rehberg;

    e.  Glenda Smithleeth; and

    f.  M. Allen Bumgardner.

The Coast Guard is **ORDERED** to award any back pay, allowances, or other benefits to which those plaintiffs are entitled by law as a result of that correction.

(4) On or before January 24, 2021, the parties are **ORDERED** to file a joint status report setting forth a schedule that proposes dates pertinent to the Court's consideration of collective action proceedings.

**IT IS SO ORDERED.**



s/      David A. Tapp
DAVID A. TAPP, Judge