# In the United States Court of Federal Claims

No. 18-923C
Filed: May 16, 2025

**TONIA TIPPINS, et al.,**

    *Plaintiffs*,

v.

**THE UNITED STATES,**

    *Defendant*.

*Nathan S. Mammen* and *Cole T. Tipton*, Snell & Wilmer LLP, Washington, D.C., with *Ragan Naresh* and *Grace Brier*, Kirkland & Ellis LLP, Washington, D.C., for Plaintiffs.

*Douglas G. Edelschick*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, *Martin F. Hockey, Jr.,* Deputy Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, United States Department of Justice, with *Robert Gyenes*, General Attorney, and *Brian Judge*, Chief, Office of Claims & Litigation, United States Coast Guard, Of Counsel, Washington, D.C. for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

    The Court must define the term "same position" as it applies to the constructive service doctrine in cases of unlawful military separation. (Pls.' Mot., ECF No. 129). Plaintiffs include more than two hundred senior enlisted United States Coast Guard members who were involuntarily retired in an unlawful process.[1] *See Tippins v. United States*, 154 Fed. Cl. 373, 378–83 (2021), *aff'd*, 93 F.4th 1370 (Fed. Cir. 2024). They now seek to be placed in the same position they would have been in but for their illegal release from duty. The Coast Guard contends that despite its earlier wrongful conduct, 232 out of 243 Plaintiffs would have been involuntarily retired pursuant to its high year tenure ("HYT") policy regardless of their improper

---

[1] Plaintiffs were retired pursuant to Career Retention Screening Panels (CRSPs) which selected plaintiffs for involuntarily retirement to make room for the less senior service members to advance. *Tippins v. United States*, 154 Fed. Cl. 373, 375–76 (2021). This Court found the involuntary retirements to be unlawful. *Id., aff'd*, 93 F.4th 1370 (Fed. Cir. 2024).

release, and therefore those Plaintiffs are owed minimal damages.[2] (*See generally* Def.'s Resp., ECF No. 131). Plaintiffs object, first emphasizing that none were subject to discharge by HYT at the time of their unlawful separation. (Pls.' Mot. at 11). Plaintiffs contend that the unlawful separation barred their opportunity to compete for advancement and HYT waivers. (*Id*. at 14). As a result, Plaintiffs assert that retroactive application of HYT at this juncture—nearly a decade later for some, based on a post hoc procedure uniquely implemented for them—constitutes a violation of the constructive service doctrine. (*See generally id*.). The Court agrees.

The constructive service doctrine intends to "return successful plaintiffs to the position that they would have occupied 'but for' their illegal release from duty." *Barnick v. United States*, 591 F.3d 1372, 1379 (Fed. Cir. 2010) (quoting *Christian v. United States*, 337 F.3d 1338, 1347 (Fed. Cir. 2003)). Accordingly, military pay claimants are "entitled to be placed in the same position they would have been in" but for the wrongful action they suffered, "but not in a better position." *Christian*, 337 F.3d at 1344. This approach is consistent with the fundamental principle of corrective remedies, that an "injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Wicker v. Hoppock*, 73 U.S. 94, 99 (1867); *see also Pirkl v. Wilkie*, 906 F.3d 1371, 1378 (Fed. Cir. 2018) (collecting cases). Perfection is not required; "as near as may be" reflects the reality that realization of a status long passed can rarely be exact. *Wicker*, 73 U.S. at 99.

"[T]he constructive service doctrine bars retroactive release only to the extent that a sanctuary statute itself would have prevented the plaintiff's involuntary release from active duty." *Faerber v. United States*, 169 Fed. Cl. 391, 398 (2024). Stated differently, the constructive service doctrine does not prevent the Coast Guard from backdating the Plaintiffs' involuntary release absent a valid regulation or policy to that effect. Further, an illegally discharged service member "is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired[.]" *Clackum v. United States*, 161 Ct. Cl. 34, 36 (1963) (internal citations omitted). However, when the Coast Guard voluntarily constrains its discretion to remove service members, it limits this "otherwise plenary discretion[.]" *Groves v. United States*, 47 F.3d 1140, 1145 (Fed. Cir. 1995).

HYT regulations set forth the maximum number of years an enlisted member can remain in their current rank without attaining a promotion. *Military Separations*, COMDTINST M1000.4 § 1.F.5 (Coast Guard Sept. 2011). HYT is only one of multiple constraints on continued enlisted service, including things such as acceptable levels of physical fitness. (*See* Hearing Transcript ("Hr'g Tr."), 71:22–72:16, ECF No. 138 (discussing how HYT is akin to

---

[2] The Coast Guard determined that of the 243 Plaintiffs, eleven of them had obtained the rank of E9 prior to their wrongful retirement under CRSP, precluding them from application of HYT. (*See* Pls.' Mot. at 7, ECF No. 129; *See also* Def.'s Resp. at 1, ECF No. 131). All but fourteen of those remaining members had an indefinite enlistment of not more than thirty years; Plaintiffs and the Coast Guard both agree that those fourteen members should be treated as if they had been on indefinite enlistment contracts. (Pls.' Mot. at 5; Def.'s Resp. at 2–3)

physical fitness standards in that they pose additional "restrictions" or "limitations" on continued service.). HYT is essentially a workforce management tool "designed to increase personnel flow, compel members to advance in their rating, and allow more consistent training and advancement opportunities for the enlisted workforce." *Id.* at § 1.F.1. HYT is inactive by default, however it "may be activated for individual pay-grades, individual ratings, or individual pay-grades within individual ratings as needs of the service dictate." *Id.* If the Coast Guard seeks to activate HYT, it must provide no less than 180 days notice via a General Message to the entire Coast Guard, known as ALCOAST.[3] *Id.* However, even if HYT is not in effect, service members may not remain on active duty beyond 30 years of active-duty service, unless granted a waiver. *Id.*

Under HYT, an enlisted member could not reenlist (a concern not implicated here) or continue to serve beyond their maximum time in service for each pay grade, also referred to as their Professional Growth Point ("PGP"). *Military Separations*, COMDTINST M1000.4 § 1.F.1, 1.F.3. Any service member who failed to advance in rank prior to his or her PGP date would be involuntarily separated from the Coast Guard. *Id.* at § 1.F.7. Service members who successfully move to the next pay grade are subject to new PGP requirements of that higher grade, and thus no longer at risk of discharge under their former rank's PGP requirements. (Pls.' Appx ("PA") at 28 (Coast Guard October 23, 2024 Memo) (discussing *Enlistments, Evaluations, and Advancements*, COMDTINST M1000.2C), ECF No 130). Movement to the next pay grade is accomplished by being ranked on an advancement list which considers several factors, including: (1) score on a service wide examination; (2) rating-specific information; (3) time in service; (4) sea/surf duty; (5) performance evaluation scores; and (6) personal awards. (*See id.*). The Coast Guard explained that service members would be ranked amongst their peers based on the total "advancement final multiple[,]" which is the combined score for these factors. *Enlistments, Evaluations, and Advancements*, COMDTINST M1000.2C § 3.A.3.f. "Cutoff points" are established for each rating and rate and are based solely on the anticipated vacancies for a specific period of eligibility. *Id*. at § 3.A.27.b. Only service members whose names appear at or above the cutoff are guaranteed advancement to the next rank. (*Id.*).

Here, the Coast Guard argues that applying HYT to Plaintiffs places them in the same position they would have been but for their illegal separation. (Def.'s Resp. at 10). The Coast Guard also claims that a failure to implement HYT would place Plaintiffs in a better position than that of their peers retained by Career Retention Screening Panels ("CRSP"). (*Id.*). Plaintiffs contend that the Coast Guard's retroactive application of HYT, a decade following their unlawful discharge, when none were yet subject to the HYT, and utilizing different procedures than those

---

[3] One purpose of the Coast Guard wide messaging when HYT is reactivated is to provide those who may eventually be subject to HYT the opportunity to improve their career status. *Military Separations*, COMDTINST M1000.4 § 1.F.1 (Coast Guard Sept. 2011) ("All members are encouraged to attain advancement in accordance with the Professional Growth Points given below."). None of the Plaintiffs were afforded the opportunity to improve the factors significant to the application of HYT. *See generally Enlistments, Evaluations, and Advancements*, COMDTINST M1000.2C.

in effect a decade ago, violate the law. (Pls.' Mot. at 1). The Court finds the Coast Guard's rationale flawed.

There are two facts the Court finds helpful in resolving this dispute: (1) in the absence of the unlawful discharge pursuant to CRSP, any Plaintiff who failed to promote would have been discharged under HYT; and (2) the improper discharge under CRSPs necessarily removed any possibility for Plaintiffs to advance during their constructive period of service. What remains uncertain is whether any Plaintiff would have failed to promote.

The parties agree that the HYT policy was in effect during the period of constructive service in this case.[4] (*See* Hr'g Tr., 9:10–10:7). The parties also agree that the "starting point" for calculating Plaintiffs' entitlements is to place them in the position they would have occupied absent the illegal separation. (Hr'g Tr., 71:13–18 (Plaintiffs: "We put them back in the position they would have had but for the illegal act . . . [a]nd we don't speculate what happens after that."), 65:16–21 (The Coast Guard: "Under the Constructive Service Doctrine, these plaintiffs have a right to be placed in the position they likely would have been in but for their improper separation[.]")). However, what might have occurred *after* Plaintiffs are placed back into their respective positions is completely speculative. For example, while it is entirely possible that some of the 232 Plaintiffs would have achieved a high score on the service-wide exam and received performance awards, it is equally possible that some of the Plaintiffs would not have taken the exam at all. There is simply no way for the Court to know what would have occurred.

The Coast Guard argues that Plaintiffs would have been separated under HYT despite their thirty-year enlistments. (*See generally* Def.'s Resp.). The Coast Guard's regulations provide that the Commander "will discharge a member who fails to advance before his or her PGP date." *See Military Separations*, COMDTINST 1000.4 § 1.F.7. The language of this regulation makes the discharge contingent on a single activating factor, when "a member fails to advance[.]" *Id.* It follows that HYT only applies once a service member has failed to successfully advance. Although HYT was broadly in effect across the entire Coast Guard population, it is largely inapplicable to specific individuals until the regulations' defined failure occurs.

The Coast Guard insists that its *post hoc* determinations regarding Plaintiffs are based solely on each service member's record.[5] Specifically, the United States insists that "what we're

---

[4] In contrast, HYT was until recently inactive for a period between 2022 and early 2025. Annie Sheehan, *High Year tenure is Suspended until Jan. 1, 2025*, UNITED STATES COAST GUARD (Oct. 3, 2022), https://www.mycg.uscg.mil/News/Article/3177255/high-year-tenure-is-suspended-until-jan-1-2025/#:~:text=High%20Year%20Tenure%20(HYT)%20is,rank%20without%20attaining%20a%20promotion.

[5] Beginning in October 9, 2024, the Coast Guard reviewed each Plaintiff's service record, calculated their HYT date, and determined that 232 out of 243 Plaintiffs would have been involuntarily separated on a date it determined. (*See* Pl.'s Mot. at 7; *See also* Def.'s Resp. at 1). The identity of the Coast Guard official who made this determination has not been disclosed. (*See generally* Def.'s Resp.).

talking about is a Coast Guard decision based on the record that exists, and there's no evidence of any waiver request or promotion[.]" (Hr'g Tr., 60:24–61:2). This ignores that Plaintiffs were foreclosed from promotion due to their unlawful discharge, and that none were allowed to seek a HYT waiver resulting from the same illegal separation. Plaintiffs concede, and the Court agrees, that the Court cannot assume any plaintiff would have been promoted. (Hr'g Tr., 71:4–9 (The Court: "[W]hy should a court determine, but for this mandatory improper retirement, you would have gotten promoted and that would have affected HYT?" Plaintiffs: "I don't think that the [C]ourt needs or should say you would have gotten promoted.")). However, aside from the argument, the Coast Guard provides no evidence that the Plaintiffs would have failed to promote. (*See generally* Def.'s Resp.).

The United States claims that we know "with metaphysical certainty, that [HYT] applied to these [Plaintiffs,]" and its application places them where they most likely would have been absent the improper discharge. (Hr'g Tr. 90:20–91:4 (citing *Barnick v. United States*, 591 F.3d 1372, 1380 (Fed. Cir. 2010))). While the Court agrees generally that HYT was in effect, the Court disagrees with the United States argument that it should be applied to these Plaintiffs and *Barnick* is distinguishable thereby offering little support. Under *Barnick*, the Coast Guard has "the power to backdate discharges where such backdating places the claimant where he [or she] likely would have been absent the improper discharge[,]" *See Barnick*, 591 F.3d at 1380. However, the *Barnick* claimant's new discharge date was based on factors existing at the time of his initial improper discharge. *See id.* In fact, there was no evidence that the claimant would have been able to remain on active duty absent the improper discharge. *Id.* at 1380 (finding the claimant "would still have been discharged at that time for physical disability"). This is not akin to the present scenario where Plaintiffs were serving under indefinite enlistment contracts. Unlike *Barnick*, there is some evidence here that Plaintiffs would be able to remain on active duty. Plaintiffs are to be restored to constructive active duty, and since they were serving under indefinite enlistment contracts, they are entitled to constructive active-duty credit until some action releases them from active duty. *Groves*, 47 F.3d at 1145 (citing *Garner v. United States*, 161 Ct. Cl. 73, 75 (1963).

Additionally, when regulations provide standards and instructions to exercise what would otherwise be a discretionary decision, the Court may review the Coast Guard's actions for compliance with those instructions. *Fuentes v. United* States, 107 Fed. Cl. 348, 352 (2012). HYT is a valid and enforceable policy that could potentially cut short a service member's enlistment; however, it is conditioned on a service member's failure to advance, which never occurred in this context. *See Military Separations*, COMDTINST 1000.4 § 1.F.9. Here, the Coast Guard has retroactively attempted to impose HYT as a regulation that would cut short the remaining term of Plaintiffs' indefinite enlistments. (*See generally* Def.'s Resp.). Fatal to this attempt to apply HYT is the necessary assumption that Plaintiffs would have failed to advance during their period of constructive service. *See Military Separations*, COMDTINST 1000.4 § 1.F.9.

To align with the Coast Guard's position, the Court must assume a promotion *would not have occurred* during the constructive service period. Such an assumption is not based on fact or evidence. In fact, Plaintiffs were, at a minimum, several months removed from even approaching their HYT mark. (*See* Hr'g Tr., 67:17–24 (Plaintiffs: "[T]he members of the plaintiffs' class, in 2014 . . . had 2.5 to four years before . . . hit[ting HYT]. [In] 2013, all 127 of those members had at least a year before . . . hit[ting HYT]. [In] 2012, all 81 had at least nine months . . . to hit

[HYT.]")). The Court declines to speculate on whether Plaintiffs' careers would have stagnated or whether they would or would not have been promoted. *See Groves*, 47 F.3d at 1146 (declining to speculate on future promotions or lack thereof during the constructive active-duty period); *Sharpe v. United States*, 935 F.3d 1352, 1360 (2019) ("[I]t it improper for us to speculate exactly where [plaintiff's] career path would have led him but for his separation."). To make such a determination based only on the Coast Guard's retroactive determination, absent disclosure of the process utilized, facts, or evidence, would be improper.[6]

Moreover, even if Plaintiffs were properly subject to a retroactive application of HYT, the Coast Guard proposes the use of only part of the HYT regulatory framework in place at the time of their improper discharge. Under normal circumstances, a service member who fails to promote under the competitive process may seek a waiver to change their PGP, which, if granted, would permit them to avoid discharge under HYT. *Military Separations*, COMDTINST 1000.4 § 1.F.9. Because none of the Plaintiffs were close to the HYT deadline, no waivers were necessary. However, the Coast Guard now proposes a new, frankensteined waiver process allowing Plaintiffs to submit waiver requests to a "special [HYT] waiver panel." (Hr'g Tr., 33:11–15).

This proposal is concerning for multiple reasons. First and foremost, a newly constituted waiver panel would not be comprised of the same individuals utilized when Plaintiffs would have been subject to HYT. Second, this new panel would not review Plaintiffs' waiver requests against those of other (non-CRSP) service members. Third, Plaintiffs would not be permitted to submit their commanding officer's endorsement as would have been permitted in years past.[7]

---

[6] A simplified, but otherwise apt, comparison is helpful. Like HYT, every Coast Guard member is subject to fitness standards. Failure to achieve those standards may result in discharge. Were the Coast Guard to suggest now, roughly a decade following its unlawful CRSP discharges, that each Plaintiff would have been discharged for failing to successfully meet their upcoming fitness assessments is an act of impermissible speculation. The determinative date for physical standards, as yet unreached when each Plaintiff was impermissibly discharged, cannot be now used to minimize what Plaintiffs are due. Perhaps some Plaintiffs may have been discharged for fitness failure, perhaps not. Application of the constructive service doctrine requires that the Court return Plaintiffs to the situation *at the time* of the Coast Guard's wrongful conduct and not some future point based on conjecture. *See Wicker v. Hoppock*, 73 U.S. 94, 99 (1867); *see also Pirkl v. Wilkie*, 906 F.3d 1371, 1378 (Fed. Cir. 2018) (collecting cases).

[7] The Coast Guard insists that inclusion of a commander's endorsement along with a waiver request is unnecessary and a favorable endorsement would be presumed. (Hr'g Tr. 32:24–33:3 (The Court: "Why are they saying that the commanding officer's endorsement isn't necessary here?" The Coast Guard: "Because the members have been out of the Coast Guard for a long time."); Hr'g Tr. 53:20–21 (The Coast Guard: "[T]he Coast Guard is going to assume a favorable command endorsement[.]")). True to the Coast Guard's assertions, the possibility for any of the Plaintiffs to secure an endorsement is little to none. (Hr'g Tr. 32:6–7 (The Coast Guard: "It's unlikely that they could [procure their commanding officer's endorsement[.]"). The fact that the

Fourth, Plaintiffs were never provided the opportunity to improve their chances of obtaining a waiver. Fifth, Plaintiffs were necessarily foreclosed from improving their professional standing for periods ranging from many months to multiple years. (Hr'g Tr., 35:25–36:7 (The Court: "So we're going to judge them on 2014 waiver panel standards that they were using at the time[?]" The Coast Guard: "Yes." The Court: "But it's not going to be the same panel, they're not going to be able to get the commanding officer's endorsement, yea or nay, which I really assume since it's right in the regs as pretty important[.]")). Further still, Plaintiffs are deprived of the ability to requests waivers based on individual skill sets critical to the Coast Guard which the Coast Guard acknowledges is something that was considered. *Military Separations*, COMDTINST 1000.4 § 1.F.9.(3)(a); (*see also* Hr'g Tr., 21:3–10 (acknowledging the Coast Guard granted waivers to members who could fill a "critical service need.")). However, because the Court has determined that application of HYT is improper in this case, there is no need to delve further into what is nevertheless a concerning proposed waiver process.

      Accordingly, Plaintiffs' Motion for an Order holding the Coast Guard's application of HYT is contrary to law, (ECF No. 129), is **GRANTED.** The Court reserves judgment on the other aspects of Plaintiffs' motion.

      The Court **ORDERS** the Coast Guard to calculate Plaintiffs' retirement dates without using HYT to cut short Plaintiffs' period of constructive service. Defendant is **DIRECTED** to calculate retirement and backpay calculations for Plaintiffs based on their updated retirement date and notify Plaintiffs of those calculations as they are complete. The parties **SHALL** meet and confer monthly and provide a joint status report before the last day of each month regarding the Coast Guard's progress.

      Finally, Plaintiffs filed a Motion for Leave to File a Third Amended Complaint, (ECF No. 141), seeking to add a Plaintiff inadvertently admitted from Plaintiffs' Opt-In Consent Form filing, (ECF No. 103), and its Second Amended Complaint, (ECF No. 107). The United States does not oppose this Motion. Plaintiffs' Motion is **GRANTED**.

    **IT IS SO ORDERED.**

                                                             s/   David A. Tapp
                                                             DAVID A. TAPP, Judge

---

strength of an endorsement could potentially impact the waiver decision is not overlooked by the Court.